IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

HEWITT P. ROBERT, JR.,                    )
                                          )
          Plaintiff,                      )
                                          )
     v.                                   )     CIVIL ACTION NO. 3:08-cv-329-WKW
                                          )
VANCE N. ABBETT, et al.,                  )
                                          )
          Defendants.                     )

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 3, filed May 6, 2008). Now pending before the Court are multiple motions to dismiss and Plaintiff's response. For good cause herein shown, it is the recommendation of the Magistrate Judge that the Court GRANT the motions to dismiss and DENY the motions for sanctions.

## I. PARTIES AND COMPLAINT

*Pro se* Plaintiff Hewitt Pat Robert, Jr. ("Robert") initiated this action on May 2, 2008. *See* Doc. 1, Complaint. On August 13, 2008, the Court granted Robert's request to amend his complaint, but also directed Robert to identify with specificity all of his allegations and claims as to each defendant. *See* Doc. 26. Robert filed his amended complaint on August 25, 2008. *See* Doc. 27. In the amended complaint Robert asserts various allegations against a large

number of defendants including: (1) Lee County District Attorney Vance Abbett[1] in his official and individual capacity; (2) Lee County Circuit Clerk Corinne Hurst in her official and individual capacity; (3) Lee County; (4) Lee County Sheriff Jay Jones in his official and individual capacity; (5) Jerry Hauser in his official and individual capacity; (6) Gregory Cox in his official and individual capacity; (7) Glen King in his individual capacity; (8) Kirkland, King & Renfro, P.C.; (9) Alabama Assistant Attorney General Bettie Jean Carmack in her official and individual capacity; (10) Joe Dean in his individual capacity; (11) Winthrop Johnson in his individual capacity; (12) Webb & Eley, P.C.; (13) Jennifer Tompkins in her official and individual capacity; (14) the City of Opelika; and (15) the *Opelika-Auburn News*. *Id*. at p. 1-3.[2]  In his one hundred and seven page nine-count complaint, Robert asserts claims for violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments via 42 U.S.C. § 1983, conspiracy under 42 U.S.C. §§ 1983, 1985, defamation, libel, malicious prosecution, abuse of process, false imprisonment, conspiracy, intentional infliction of emotional distress, invasion of privacy, breach of contract, and malpractice. *See generally id.* Robert seeks over $1.4 billion in damages and requests an additional 33% if he hires an attorney. *Id*. at p. 37.  Robert further demands the dismissal of all the criminal charges pending against him. *Id*. *generally*.

---

[1]     The Court takes judicial notice that Vance N. Abbet is the District Attorney for the Thirty-Seventh Judicial District, State of Alabama.

[2]     The page numbering in Plaintiff's Amended Complaint is confusing at times because he inserts random exhibits; however, the Court will refer to the page numbers designated at the bottom of the page.

All Defendants with the exception of the *Opelika-Auburn News* have filed motions to dismiss. *See* Docs. 40, 41, 46, 47, 49, 51, 52, 54, 60, 63, 67, and 74. The defendants assert a variety of defenses which will be addressed specifically in the sections below. A few defendants have also filed motions for sanctions against Robert in which they assert that this suit was brought solely for the purposes of frustrating the legal system and intimidating the defendants. *See* Docs. 44, 46, and 85.

## II. JURISDICTION AND VENUE

One defendant, Joseph L. Dean, Jr., challenges both the Court's subject matter jurisdiction and personal jurisdiction. However, as discussed in the section pertaining to Dean, the Court rejects those arguments. Defendant Vance Nick Abbett also maintains in his motion to dismiss that "this Court lacks subject matter jurisdiction over the subject matter in the Amended Complaint against this Defendant." However, aside from his request of the Court to decline supplemental jurisdiction, Abbett's arguments pertain solely to the defenses of immunity and failure to state a claim and have no bearing on this Court's subject matter jurisdiction.

The Court finds that it properly exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367. Further, there are allegations sufficient to support personal jurisdiction and venue.

## III. STANDARD OF REVIEW

All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure. Although the court is required to construe a *pro se* litigant's pleadings liberally, the court does

not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

**A.      Federal Rule Civil Procedure 12(b)(6) - Failure to State a Claim**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Gilmore*, 125 F. Supp.2d at 471.  To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, —, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  In considering a defendant's motion to dismiss, the "court must view the complaint in the light most favorable to the plaintiff and accept all the plaintiff's well-pleaded facts as true." *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (citing *St. Joseph's Hosp. Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986)).  In other words, in deciding a 12(b)(6) motion to dismiss, the court will accept the petitioner's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L. Ed.2d 59 (1984); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citing *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997)). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505

F.2d 97, 100 (5th Cir. 1974) (conclusory allegations and unwarranted deductions of fact are not admitted as true).[3]

Thus, a complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at — , 127 S.Ct. at 1966. Further, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Id*. It is not enough that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id*. at 1968 (internal quotation and alteration omitted).

## B.  Federal Rule Civil Procedure 12(c) - Judgment on the Pleadings

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings pursuant to Rule 12(c) is appropriate when "no

---

[3]      In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega v. Christian*, 85 F.3d 1521, 1524-25 (11th Cir. 1996); *accord Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (quoting *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001)) ("Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). When reviewing a motion for judgment on the pleadings, the court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *Ortega*, 85 F.3d at 1524-25. A judgment on the pleadings is limited to consideration of "the substance of the pleadings and any judicially noticed facts." *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002). In other words, a Rule 12(c) motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (applying 12(b)6 standard of review to a 12(c) motion).[4]

## IV. YOUNGER ABSTENTION DOCTRINE

To the extent that Robert challenges the criminal charges pending against him before

---

[4]       A Rule 12(b)(6) motion and a Rule 12(c) motion functionally serve the same purpose. However, a Rule 12(b)(6) motion must be made before the responsive pleadings are filed, while Rule 12(c) motions may be filed afterward.

the Circuit Court in Lee County, Alabama, he is entitled to no relief at this time.  Under the decision of the United States Supreme Court in *Younger v. Harris*, 401 U.S. 37, 43-44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), a federal court must refrain from interfering with pending state criminal proceedings "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  The *Younger* abstention doctrine is premised upon a fundamental "public policy against federal interference with state criminal prosecutions." *Id*. at 43; 91 S.Ct. at 750.

Federal courts ordinarily should refrain from deciding the merits of a case when (1) there is a pending state judicial proceeding, (2) the proceeding implicates important state interests, and (3) the parties have an adequate opportunity to raise any constitutional claims in the state proceeding. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).  With respect to the first *Middlesex* factor, the relevant inquiry is "whether the federal proceeding will interfere with an ongoing state court proceeding. If there is no interference, then abstention is not required." *31 Foster Children v. Bush*, 329 F.3d 1255, 1274, 1276 (11th Cir. 2003).

From his lengthy complaint, it is clear that Robert asserts many more claims than his generalized complaints about the underlying criminal charges.  Thus, to the extent that Robert asks the Court  to interfere with the underlying criminal proceeding, the Court will abstain.  However, to stem the tide of litigation sure to come – regardless of the outcome of the underlying criminal proceeding – the Court will proceed to consider the merits of the federal law claims relating to Robert's request for monetary damages.  The Court will then turn to the

remaining claims for declaratory and injunctive relief as well as Robert's state law claims.

## V.  CLAIMS AGAINST MULTIPLE DEFENDANTS

Several claims asserted in Robert's Complaint against multiple defendants cannot survive.  Since the analysis for each is the same, the Court has consolidated those claims here.

### A.    Malicious Prosecution under § 1983

The Court first considers Robert's § 1983 claim for malicious prosecution.  A § 1983 claim for malicious prosecution does not accrue until the criminal proceedings are resolved in plaintiff's favor.[5]  *Heck v. Humphrey*, 512 U.S. 477, 489, 114 S.Ct. 2364, 2374, 129 L.Ed.2d 383 (1994); *see also Kelly v. Serna*, 87 F.3d 1235, 1239 (11th Cir. 1996) (citing *Heck*); *Burgest v. McAfee*, 264 Fed. Appx. 850, 852-53 (11th Cir. 2008) (unpublished) (stating same).  Therefore, the malicious prosecution claim fails because Robert cannot meet the requisite elements.  The elements for a § 1983 malicious prosecution claim are (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.  *Wood v. Kesler*, 323 F.3d 872, 881-82 (11th Cir. 2003) (citing *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998), and stating that elements are the same as those under Alabama law for malicious prosecution). On the record presently before the Court, it appears that the criminal proceedings against Robert are still ongoing, as noted by Robert in

_____

[5]      As discussed below, the § 1983 claim for malicious prosecution is due to be dismissed, but the Court rejects the theory that the claim is barred by the statute of limitations as the claim has not yet accrued.

his own Amended Complaint.  *See, e.g.*, Doc. 27 at pp. 4-5, 10, 12, 19-20, 25, 28, 32, 35, and 37.[6]

To the extent that Robert asserts that his incomplete extradition constitutes a separate proceeding, the Court rejects the argument because of the very nature of interstate extraditions.  The Extradition Clause states: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."  U.S. Const. Art. IV, § 2, cl. 2. Without a state indictment, there would be no extradition from one state to another state. Thus, an extradition is dependent upon and intertwined with the underlying criminal charges from the other state.  Further, the Supreme Court has specifically and repeatedly held that "extradition proceedings are 'to be kept within narrow bounds;' they are 'emphatically' not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party."  *California v. Superior Court of California, San Bernardino County*, 482 U.S. 400, 407-08, 107 S.Ct. 2433, 2438, 96 L.Ed.2d 332 (1987) (citations omitted). Despite the fact Robert's extradition from Louisiana was never completed and, in his words, "end[ed] the case favorably for Mr. Robert," an extradition specifically avoids any analysis of the merits of the criminal charges.  Thus no criminal prosecution was resolved in

---

[6]     The Court does not purport to set out a comprehensive listing of the pages on which Robert states that the criminal case is ongoing, but rather notes a sampling of these which demonstrates that element three cannot be met.

Robert's favor and no claim for malicious prosecution may lie.

**B.    Eighth Amendment Claim**

The Eighth Amendment states in its entirety that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  It is not entirely clear that Robert asserts a claim under the Eighth Amendment in his Amended Complaint, nor does Robert state specifically what the factual basis of such a claim would be.  However, even if Robert asserts such a claim, the Eighth Amendment does not apply because it was designed to protect those convicted of crimes.  *Wilson v. Seiter*, 501 U.S. 294, 296-297 (1991); *Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 1083-84 (1986); *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003). Accordingly, to the extent that Robert's factual claims predate conviction and subsequent imprisonment, they are not actionable under the Eighth Amendment and must be dismissed.

**C.    42 U.S.C. § 1985 conspiracy claim**

Robert never specifically identifies the subsection of § 1985 which defendants allegedly violated, but it is clear from his Amended Complaint that the only possible section would be § 1985(3), which relates to the deprivation of rights or privileges.  "The elements of a cause of action under § 1985(3) are "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'"  *Lucero v. Operation Rescue of*

*Birmingham*, 954 F.2d 624, 627-28 (11th Cir. 1992) (quoting *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)).  More specifically, with regard to element two, the plaintiff must show "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Scott*, 463 U.S. at 829, 103 S.Ct. at 3356 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  In this case, Robert fails to make any allegations of a class-based conspiracy.  Other than random statements about certain defendants' race, Robert makes no reference to race, age, gender, or any other class-based discriminatory animus.  Moreover, the only "class" the Court could reasonably glean from Robert's complaint would be persons identified on the Lee County Sheriff's "most wanted" website. The "most wanted" persons are not a "class" of persons within the meaning of § 1985.  Based on Robert's failure to show a class-based discriminatory animus, the § 1985 conspiracy claims warrant dismissal.  The court will now turn to the remaining claims against each defendant.

## VI.  DEFENDANT LEE COUNTY

On September 8, 2008, Lee County filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, Lee County avers that Robert's federal claims are due to be dismissed for the following reasons: (1) Lee County cannot be held liable pursuant to *respondeat superior*; (2) the Amended Complaint fails to comply with the short and plain statement requirement under Fed. R. Civ. P. 8; (3) the claims are barred by the applicable statute of limitations; and (4) Robert has not demonstrated that Lee County's actions or inactions have resulted in the denial of his rights under the Constitution.  *See* Doc. 41 at ¶¶

1-5. Lee County also asserts that Robert's claims are barred by the *Younger* doctrine and his claim for damages is excessive and exceeds that authorized by law. *Id*. at ¶¶ 7-9.

In his response, Robert does little to address the substantive legal arguments asserted by Lee County; rather he offers only unsupported allegations against counsel for Lee County and Lee County's control over the website used to publish the alleged defamatory materials. *See* Doc. 73 at p. 35-36. Robert also makes the conclusory statement that it is a proven fact that Lee County's policy is to allow the Sheriff to defame and libel innocent people. *Id*. at 36. He further reiterates that he restricts his claims against Lee County to Counts 1 and 2 of the Amended Complaint. *Id*. Robert also clearly indicates that he does not assert any conspiracy claims – either pursuant to §§ 1983, 1985, or state law – against Lee County by contending that "Lee County is an inanimate non thinking entity and no claim is made against Lee County for the conspiracy or the direct actions of the tortfeasors." *See* Doc. 27 at p. 12. Thus, the Court determines that the only actions brought against Lee County are claims for defamation, libel, and constitutional deprivations under § 1983. For the reasons discussed below, the federal and state law claims against Lee County are due to be dismissed under Fed. R. Civ. P. 12(b)(6).

Pursuant to 42 U.S.C. § 1983, Robert asserts a variety of constitutional violations against Lee County. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred[.]" *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). Robert asserts violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the

Constitution.

It is well established that there can be no *respondeat superior* liability for § 1983 claims. *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Holloman ex. rel. Holloman v. Harland*, 370 F.3d 1252, 1290 (11th Cir. 2004). Therefore, the named defendant in a § 1983 suit may only be held liable for its own unconstitutional conduct and not that of subordinates or employees. *Monell*, 436 U.S. at 694.

With regard to the claim against Lee County, the relevant question is whether the County itself violated Robert's constitutional rights.  "A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (citations omitted).  Consequently, "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Id.* at 1292.  To determine whether Lee County is a proper defendant, "[a] court's task is to 'identify those officials or government bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillian v. Monroe County*, 520 U.S. 781, 784-85(1997) (quoting *Jett v. Dallas Indep. School. Dist.*, 491 U.S. 701, 737 (1989)).

As noted above, a local government may be subject to liability under § 1983 if the constitutional violation is caused by a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.  In

other words, Lee County is liable only for constitutional deprivations that result from its customs, policies, and practices. Here, case law is well settled that an Alabama county sheriff is an executive officer of the state and therefore not an employee of the county for the purposes of imposing liability on the county. *See Turquitt*, 137 F.3d at 1288 (citing *Parker v. Amerson*, 519 So.2d 442, 443 (Ala. 1987) and *Hereford v. Jefferson County*, 586 So.2d 209, 209 (Ala. 1991)). As a result, Lee County cannot be held liable for any actions by the Sheriff.

Next, Robert cannot rely on the theory of *respondeat superior* to impute liability to Lee County based on the acts of the District Attorney and the Circuit Clerk. *See id*. at 691. To prevail on a § 1983 claim against Lee County, Robert "must prove both that [his] harm was caused by a constitutional violation and that the government entity is responsible for that violation." *Wyke v. Polk County Sch. Bd.*, 129 F.3d 560, 568 (11th Cir. 1997) (citations omitted). In several places in his own Amended Complaint Robert states that his claims against Lee County are based on vicarious liability. *See* Doc. 27 at pp. 36 and 54. While Robert mentions that Lee County had a policy of listing all suspects as extremely dangerous on the Sheriff's website, he also specifically states that "Lee County is an inanimate non thinking entity and no claim is made against Lee County for the conspiracy or the direct actions of the tortfeasors, only for vicarious liability for libel using the facilities of Lee County and its website to impugn the name of Plaintiff, Robert." *See* Doc. 27 at p. 12. Clearly Robert restricts his claims against the County to his state law claims and does not ascribe to it the constitutional deprivations asserted via § 1983.

Furthermore, even if Robert did assert his defamation and libel claims under § 1983,

"allegations of injury to reputation alone do not support a section 1983 claim for violation of due process, and therefore must be accompanied by a constitutionally recognized injury." *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436 (11th Cir. 1998) (citing *Paul v. Davis*, 424 U.S. 693, 712 (1976)).  A person's interest in reputation alone is not a protected liberty interest within the meaning of the due process clause.  *Paul*, 424.  "This rule, labeled the 'stigma-plus' standard, requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation." *Cypress Ins. Co.*, 144 F.3d at 1436-37 (citing *Paul*, 424 U. S. at 712).  With regard to the alleged policy of Lee County to defame persons via the website, Robert has not averred the deprivation of any legal rights or other tangible property interests beyond the alleged damage to his reputation.  While defamation may be a tort, it is not a violation of the right to due process of law.  *See Cypress Ins. Co.* 144 F.3d at 1438.  As a result, because Robert has established no federal constitutional violation caused by Lee County, the § 1983 claims asserted against Lee County must be dismissed under Rule 12(b)(6).[7]

---

[7]    Lee County raises a variety of other reasons why the § 1983 claims should be dismissed, but the Court need not reach those arguments.

## VII.  DEFENDANT JENNIFER THOMPKINS [8]

Robert asserts claims against Defendant Corporal Jennifer Thompkins ("Thompkins") of the Opelika Police Department in both her individual and official capacity.  He asserts federal due process constitutional deprivations under § 1983 and conspiracy to commit federal constitutional deprivations under 42 U.S.C. § 1983.  *See* Doc. 27 at pp. 34-35, 52-53.  He also asserts state law claims for libel, conspiracy, false imprisonment, intentional infliction of emotional distress, malicious prosecution, and abuse of process.  *Id*.  Specifically, Robert contends that Thompkins lied about him in her testimony to the Grand Jury on or about September 24, 2004.  *Id*. at 21, 34-35, 52-53.

On September 22, 2008, Thompkins filed her motion to quash service or motion to dismiss.  *See* Doc. 49.  Thompkins asserts that service was improper, process was insufficient and service of process was insufficient.  *Id*. at ¶¶ 1-3.  Thompkins also maintains that the claims against her are due to be dismissed under Rule 12(b)(6) because they are barred by the statute of limitations, Thompkins is entitled to absolute immunity for her Grand Jury testimony, and Thompkins is also entitled to qualified immunity.  *Id*. at ¶¶ 4-7.

In Robert's response, he first makes various irrelevant complaints and allegations regarding defense counsel, as well as the corporate/conflict disclosure statements required by the local rules.  *See* Doc. 73 at p. 31-33.  Next Robert states that while he obviously was not

---

[8]  In the Amended Complaint, Robert identifies the defendant as Corporal Jennifer Tompkins.  *See* Doc. 27.  The Defendant's motion to dismiss spells the last name as "Thompkins."  *See* Doc. 49.  The Court will use the spelling identified by the defendant.

present at the Grand Jury proceedings, he logically concludes that Thompkins must have made up anything she testified about. *Id*. at 33.  He also reiterates his claim under §§ 1983 and 1985 and disputes that all his claims are time-barred.  *Id*. at 33-34.

## A.    Statute of Limitations

It is clear from the face of the Amended Complaint that the claims Robert lodges against Thompkins rest on her alleged Grand Jury testimony which occurred on or before September 23, 2004. *See* Doc. 27 at pp. 21, 34-35, 52-53 and Exhibit B.  Accordingly, he was required to bring suit prior to the expiration of the applicable statute of limitations for each of his claims.

In federal causes of action for which Congress has not specifically provided a statute of limitations, the United States Supreme Court has established that a state's statute of limitations applies. *International Union, United Auto., Aerospace & Agr. Implement Workers of America (UAW), AFL-CIO v. Hoosier Cardinal Corp*., 383 U.S. 696, 703-04 (1966).  Thus, in § 1983 claims federal courts must look to state law to determine what statute of limitations is applicable. S*ee City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 n. 2 (11th Cir.2002) ("Section 1983 claims are governed by the forum state's residual personal injury statute of limitations[.]").  Here, the Court looks to Alabama law for the guiding statute of limitations and finds that it is two years under the state's residual statute of limitations for personal injury actions.  ALA. CODE § 6-2-38(l);[9] *see also Lufkin v. McCallum*, 956 F.2d 1104, (11th Cir.

---

[9]      The statute states: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought

1992) (applying ALA. CODE § 6-2-38(l) and its two year statute of limitation in § 1983 action).[10]

Based on Robert's Amended Complaint, the alleged misconduct by Thompkins took place on or before September 24, 2004.  *See* Doc. 27 at p. 21, 34-35, 52-53 and Exhibit B. Robert was required to  bring his § 1983 claims within two years of that date – that is, September 24, 2006.[11]  The facts and circumstances giving rise to the § 1983 claims were within Robert's knowledge for more than two years before the filing of the instant suit and, therefore, those claims are  time-barred.

**B.    Absolute Immunity for Grand Jury Testimony**

Additionally, Thompkins retains absolute immunity for her testimony before the Grand Jury.  A police officer is entitled to the same absolute immunity as are lay witnesses in testifying at trial or before a grand jury.  *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Scarbrough v. Myles*, 245 F.3d 1299, 1305 (11th Cir. 2001).  Accordingly, the federal claims against Thompkins warrant dismissal.

---

within two years."

[10]    The Court has previously discussed the dismissal of the § 1985(3) claims because of the failure to allege class-based discriminatory animus.  In addition,  the § 1985 action against Thompkins would also be barred by the statute of limitations.  *Trawinski v. United Techs.*, 313 F.3d 1295, 1298-99 (11th Cir. 2002) (Alabama's residual, two-year limitations period for personal injury actions provided by ALA. CODE § 6-2-38(l) applies to § 1985 actions).

[11]    At the latest, Robert knew about Thompkin's actions upon his arrest on January 18, 2006 in Louisiana.  *Id.*  Under the two year statute of limitations, the last date on which Robert could timely file his § 1983 suit against Thompkins would be January 18, 2008. Robert did not file suit until May 2, 2008.

## VIII.   DEFENDANT CITY OF OPELIKA

In his Amended Complaint Robert asserts claims against the City of Opelika.  *See* Doc. 27 at p. 2.  Specifically, he alleges that the City of Opelika has a "policy of lying in court" and "an official policy of having its police officers falsify reports and lie under oath simulating a legal process."  *Id.* at 13, 35, 53.  Robert seeks $10,000,000 in compensatory damages, but does not seek punitive damages against the City of Opelika.  *Id.* at 35-36, 53-54.

The City of Opelika filed a motion to dismiss on October 7, 2008, in which it contends that Robert's claims fail as a matter of law because (1) there is no *respondeat superior* under § 1983, (2) Robert cannot establish an underlying constitutional violation, and (3) the *Younger* abstention doctrine applies.  *See* Docs 63-64.  In his response, Robert makes various claims against defense counsel and notes that he has not received a Corporate/Conflict Disclosure statement.  *See* Doc. 72 at p. 31.  He also makes random allegations against another City of Opelika attorney.  *Id.* at 33.  However, Robert does little to address the substantive legal arguments presented in the motion to dismiss.

As noted previously, it is well established that there can be no *respondeat superior* for § 1983 claims.  *Monell*, 436 U.S. at 691; *see also Snow ex rel. Snow v. City of Citronelle, AL*, 420 F.3d 1262, 1270 (11th Cir. 2005) ("A municipality may not be held liable under section 1983 on a theory of respondeat superior.").  ""It is only when the 'execution of the government's policy or custom... inflicts the injury' that the municipality may be held liable under [section] 1983.""  *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

With regard to the § 1983 claims against the City of Opelika, the central question is

whether the City itself violated Robert's constitutional rights.  A municipality may be found liable under § 1983 only if the violation of the plaintiff's rights is attributable to a municipal policy or custom.  *Monell*, 436 U.S. at 694; *Williams v. Town of White Hall, Ala.*, 450 F.Supp.2d 1300, 1303 (M.D. Ala. 2006).   Therefore, Robert must show that (1) his constitutional rights were violated and (2) the violation was attributable to a policy or custom of the City of Opelika.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (citations omitted); *see also Snow*, 420 F.3d at 1271(To hold the municipality liable, there must be "'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'") (citations omitted).

Robert claims that the City has "an official policy of having its police officers falsify reports and lie under oath simulating a legal process."  *See* Doc. 27 at p. 35, 53.  He also contends that Thompkins carried out "an official policy of the City of Opelika, to lie in court." *Id*. at 36; *see also id*. at 53-54 (Thompkins carried out "an official policy of the City of Opelika, to lie in court in a conspiracy.").   Robert bases his allegations on the Grand Jury testimony of Thompkins and his allegations that defense counsel lies to the court.  *See* Doc. 73 at p. 31-35.  Even assuming that false testimony by a police officer in and of itself may violate an accused's constitutional rights – an assumption on which the Supreme Court has cast doubt – Robert cannot maintain his claims against the City of Opelika because, despite his conclusory allegations, his complaint fails to show an official policy which would establish § 1983 liability.  *See Briscoe*, 460 U.S. at 327 n. 1 (regarding false testimony).

"[M]unicipal liability may be based upon (1) an action taken or policy made by an

official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994). Robert fails on both accounts. In his Amended Complaint, he fails to identify an official policy maker who approved the alleged falsehoods, and he also does not address that omission in his response to the motion to dismiss despite being put on notice of the failure. Neither does Robert establish a "'persistent and wide-spread practice'" of abuse, despite his conclusory assertions. *See Church*, 30 F.3d at 1345 (quoting *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986)). Beyond his allegations against Thompkins, Robert points to a few incidents in which he maintains that City of Opelika police officers falsified reports. *See* Doc. 27 at p. 13. However, even if what Robert says is true, "[a] few isolated instances . . . will not suffice, the 'deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration.'" *Braddy v. Florida Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). Consequently, Robert's § 1983 claims against the City of Opelika must be dismissed.

## IX.  DEFENDANT ROBERT ABBETT

Robert brings a variety of claims against Vance Nick Abbett, District Attorney for the Thirty-Seventh Judicial District ("Abbett"). He asserts those claims against Abbett in both his official and individual capacity. *See* Doc. 27 at p. 1. Specifically, Robert contends that Abbett conspired with Defendant Hurst to convene a Grand Jury illegally, falsified documents

for the Grand Jury and for extradition, withheld discovery, and participated in the ongoing conspiracy against him by creating a simulated legal process. *See, e.g.,* Doc. 27 at pp. 12, 15-54.   Robert seeks $10,000,000 in compensatory damages and $25,000,000 in punitive damages in Count 1, and $25,000,000 in compensatory damages and $75,000,000 in Count 2 of his Amended Complaint. *See* Doc. 27 at pp. 32-33, 49-50.

On September 22, 2008, Abbett filed a Rule 12(b)(6) motion to dismiss asserting Eleventh Amendment Immunity, absolute prosecutorial immunity, and failure to state a claim because Abbett in his official capacity is not a "person" within the meaning of § 1983. *See* Doc. 51.   In his response, Robert re-asserts his allegations against Abbett and argues that Abbett is not entitled to immunity. *See* Doc. 73 at pp. 28-29.

## A.    Official Capacity Claims

Abbett maintains that the federal claims against him in his official capacity are due to be dismissed based on Eleventh Amendment immunity and because a district attorney is not a "person" within the meaning of § 1983. *See* Doc. 51 at p. 2-3.   For liability purposes, a suit against a public official in his official capacity is considered a suit against the government entity he represents. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).   The alleged violation of Robert's constitutional rights arises out of the district attorney's exercise of discretion in the prosecution of state offenses, a state-created power. *See Owens v. Fulton County*, 877 F.2d 947, 952 (11th Cir. 1989); *Jefferson County v. Swindle*, 361 So.2d 116, 118 (Ala. 1978) ("[D]istrict attorneys have specifically been declared state officers and not county officers.").   Therefore, a suit against Abbett in his

official capacity is in reality a suit against the state of Alabama.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U. S. Const. Amend. XI; *See also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984) (the Eleventh Amendment bars suit directly against a state or its agencies, regardless of the nature of relief sought); *Toth v City of Dothan, Ala.*, 953 F. Supp. 1502, 1506 (M.D. Ala. 1996) (citing Eleventh Amendment).  An unconsenting state is immune from lawsuits brought in federal court by the state's own citizens unless Congress has abrogated immunity or the state has waived its immunity.  *Id.* (citations omitted).  Neither the State of Alabama nor Congress has waived Eleventh Amendment immunity under § 1983 or § 1985.  *Taylor v. Alabama*, 95 F.Supp.2d 1297, 1310 (M. D. Ala. 2000) (citing *Wright v. Butts*, 953 F.Supp. 1352, 1358 (M.D. Ala. 1996)); *see Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524-25 (11th Cir. 1990).  Thus, Robert's federal claims against Abbett in his official capacity are barred by the Eleventh Amendment.

These claims are also barred because state officials who "act in their official capacities" (that is, acting as the state)  are outside the class of "persons" subject to liability under § 1983.  The Supreme Court has clearly established that a state does not qualify as a "person" under § 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Thus,

Abbett, in his official capacity, is not a "person" who may be sued under § 1983.[12]

## B.    Individual Capacity Claims

Prosecutors are entitled to "the same absolute immunity that the prosecutor enjoys at common law." *Imbler v. Pachtman*, 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976).  However, a prosecutor is not absolutely immune simply because he is a prosecutor, nor are all of his actions covered. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 2615-16, 125 L.Ed.2d 209 (1993).  Absolute immunity applies to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State[.]" *Id.*; *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004) ("A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government.").  "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley*, 509 U.S. at 273.

Robert contends that Abbett falsified evidence and back-dated documents. *See* Doc. 28 at pp. 12, 15-18, 20-56.; Doc. 73 at pp. 28-29.  This case is analogous to the situation presented in *Imbler,* in which the plaintiff alleged that the district attorney "knowingly used

---

[12]    Courts have held that the term "person" as used in § 1985 has the same meaning as "person" under § 1983.  *Hayden v. Alabama Dep't of Public Safety*, 506 F.Supp.2d 944, 949 (M.D. Ala. 2007) (collecting cases stating that legal principle).  This represents an additional reason that the § 1985 claims are due to be dismissed against this Defendant.

false testimony and suppressed material evidence" at trial. *Imbler*, 424 U.S. at 413. The Supreme Court held that a state prosecuting attorney acting within the scope of his duties in initiating and pursuing a criminal prosecution and in presenting the state's case is absolutely immune from civil suit for damages for alleged deprivations of the accused's constitutional rights in a § 1983 action even though such immunity leaves a wronged party without civil redress against the prosecutor. *Id.* at 427; *see also Van De Kamp v. Goldstein*, — U.S. — , 129 S.Ct. 855 (2009) (upholding prosecutor's absolute immunity in all activities intimately associated with the judicial phase of the criminal process). Thus, despite Robert's accusations, Abbett is still entitled to absolute immunity for the § 1983 federal claims against him in his individual capacity.[13]  *See id.*

## X.  DEFENDANT SHERIFF JAY JONES

Robert asserts claims against Lee County Sheriff Jay Jones ("Sheriff Jones") in his official and individual capacity. *See* Doc. 27 at p. 1. Specifically, he alleges that Sheriff Jones libeled Plaintiff by putting his name and photograph on the sheriff's website for wanted criminals and then identifying him as "dangerous" and "extremely dangerous." *Id.* at 21-22, 61-62. He further maintains that Sheriff Jones is part of the conspiracy against him. *Id.* at 16-17, 21-22, 24, 26, 31, 34, 39-40, 49, and 51-52. He seeks damages in the total amount of

---

[13]     *See also Leitgeb v. Kelley*, 510 F.Supp.2d 1227, 1232 (N.D. Ga. 2007) (application of absolute immunity to § 1985 claims against district attorney); *Moore v. Schlesinger*, 150 F.Supp.2d 1308, 1313 (M.D. Fla. 2001) (assistant U. S. Attorneys defending U. S. In civil action entitled to absolute immunity as to § 1985 claims).

$ 135,000,000 for the violations contained in Counts 1 and 2. *Id.* at 34 and 51-52.

Sheriff Jones filed a motion to dismiss on October 6, 2008, in which he asserts that Plaintiff's claims should be dismissed because (1) the official capacity claims against him are barred; (2) the complaint fails to comply with Fed. R. Civ. P. 8; (3) Plaintiff cannot establish his claims; (4) Defendant is entitled to qualified immunity; (5) the claims are barred by the statute of limitations; (6) Plaintiff's criminal case is ongoing and the federal court should apply the *Younger* doctrine; and (7) the complaint is frivolous, malicious, and designed to intimidate public officials. *See* Doc. 60.

In his response, Robert fails to address the substantive legal arguments asserted by Sheriff Jones, but instead focuses on the "timeliness" of the motion. *See* Doc. 73 at p. 12. Robert also goes on to complain about defense counsel and request default judgment. *Id.* Sheriff Jones filed a reply to the response in which he clarifies the date on which he received the Amended Verified Complaint. *See* Doc. 76. After reviewing the response and reply,[14] the Court determines that the motion to dismiss was timely filed. Further, even if the Court did not accept the motion as timely filed, Robert did not request or obtain an entry of default prior to the filing of the motion to dismiss. He cannot now seek the entry of default and default judgment, and, as a result, the Court will consider the motion to dismiss.

## A.     Official Capacity Claims

Sheriff Jones contends that the federal claims against him in his official capacity are

---

[14]     The Court did not, however, consider Sheriff Jones' attached affidavit on this motion to dismiss.

due for dismissal based on Eleventh Amendment immunity and because a sheriff is not a "person" within the meaning of § 1983. *See* Doc. 61 at p.4-5. As noted above, for liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents. *Graham*, 473 U.S. at 166. Under the Alabama constitution, a sheriff is an executive officer of the State. Ala. Const. Art. V, §112. Therefore, a suit against Sheriff Jones in his official capacity is a suit against the state of Alabama.

The Court will not repeat its previous analysis of § 1983 official capacity suits, except to reiterate that the State of Alabama has not consented to suit under § 1983, nor has Congress abrogated its Eleventh Amendment immunity for the statute. *Carr*, 916 F.2d at 1524-25. Therefore, to the extent Sheriff Jones is sued in his official capacity, he is entitled to Eleventh Amendment immunity. *See Weaver v. Mobile County*, 228 Fed. Appx. 883, 886 n. 8 (11th Cir. 2007). Moreover, like Abbett, Sheriff Jones as a state official is outside the class of "persons" subject to liability under § 1983. *See Carr*, 916 F.2d at 1525; *see also Toth*, 953 F. Supp. at 1506 (citing *Carr*). Therefore, the claims against Sheriff Jones in his official capacity must be dismissed.

## B.    Individual Capacity Claims

Robert also asserts claims against Sheriff Jones in his individual capacity. *See* Doc. 27 at p. 1. To obtain relief under § 1983, Robert must show that he was deprived of a federal right by a person acting under color of state law. *Patrick v. Floyd Medical Center*, 201 F.3d 1313, 1315 (11th Cir. 2000). The Supreme Court has noted that such a claim requires "'*both*

an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," *and* that "the party charged with the deprivation must be a person who may fairly be said to be a state actor.'"" *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) (emphasis in original); *see also West v. Atkins*, 487 U.S. 42, 48-49 (1988) reiterating two-pronged requirement).  Further, "[s]upervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability."  *Gray ex rel Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006), *cert. denied*, — U.S. — , 127 S.Ct. 2428, 167 L.Ed.2d 1129 (2007) (citing *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).  They can only be held personable liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation.  *Id.*

It is unclear from the face of the complaint which of these theories Robert asserts, so the Court looks to the factual allegations made against Sheriff Jones.  In the Amended Complaint, Robert claims that Sheriff Jones failed to effect the September 24, 2004 arrest warrant at any time in 2004 or 2005 despite allegedly knowing Robert's address.  *See* Doc. 27 at pp. 21, 24, and 29.  Robert contends that this failure violated due process.  *Id.* at 24. Sheriff Jones also included Robert on the Sheriff's "Most Wanted List" website and listed him as "dangerous" and "extremely dangerous."  *Id.* at 21-22, 25, 40.  In addition, the Amended Complaint charges that Sheriff Jones violated federal laws when Robert was arrested in

Louisiana based on the September 24, 2004 warrant.  *Id.* at 24.  After the extradition paperwork went through, Sheriff Jones failed to extradite Robert to Alabama,  which Robert claims as a due process violation.  *Id.* at 26.  After Robert was arrested in Florida, Sheriff Jones allegedly took longer than permissible to complete the extradition, again allegedly violating Robert's due process rights.  *Id.* at 39.  Robert asserts that Sheriff Jones' actions were "outside the scope of his authority as a Lee County, Alabama, Sheriff simulating a legal process."  *Id.* at 34.  Robert's alleges due process violations under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.  *Id.* at 34, 51-52. Robert also lumps Sheriff Jones into his general conspiracy claims.  *Id.* at 12.  Finally, he asserts state law claims for libel, defamation, and conspiracy against Sheriff Jones for the publication and late removal of his name and picture on the "most wanted" website and release of that information to the *Opelika-Auburn News* on May 5, 2007.  *Id.* at 62-63.

The Court determines that the allegations relating to the website arise solely as state law claims even though Robert attempts to elevate these complaints into federal constitutional violations by using terms such as "due process violation" and "simulating a legal process." Further, the Court will not address the state law claims at this time.  *See* Section XVII of this Recommendation.  Thus, the court considers only Robert's claims concerning the alleged failure to arrest, the failure to extradite from Louisiana, and the completed extradition from Florida as brought under § 1983.

Robert has offered no authority establishing that a *failure* to arrest someone violates that person's constitutional rights under the Fourth Amendment right to be free from

unreasonable searches and seizures.  Further, as previously noted, the incomplete Louisiana extradition proceeding is tied to the underlying state criminal proceeding and, therefore, it does not create its own independent cause of action.  Finally, with regard to the Florida extradition, Robert's allegations do not support a claim that Sheriff Jones was doing anything other than simply executing the extradition instructions which were authorized under the Extradition Act.  Consequently, Robert has failed to allege a cognizable constitutional violation at this time and therefore fails to meet the first prong of the § 1983 elements.  *See West*, 487 U.S. at 48-49.

To prove a § 1983 conspiracy, "'a plaintiff must show an underlying actual denial of [his] constitutional rights.'" *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) (quoting *GJR Invs., Inc.*, 132 F.3d at 1370); *accord Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990).   Additionally, a plaintiff must show that the defendants "reached an understanding to deny the plaintiff's rights."  *Hadley*, 526 F.3d at 1332 (citing *Bendiburg*, 909 F.2d at 469).  Robert fails to allege facts sufficient to establish a constitutional violation and,  thus, he cannot maintain a § 1983 conspiracy claim.

The Court also notes that even if Robert had sufficiently pled a constitutional violation, he did not allege facts that would establish that Sheriff Jones would not be entitled to qualified immunity within the scope of his discretionary authority.  "'Qualified immunity offers a complete protection for governmental officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."'"*Bostic*, 458 F.3d 1295 at 1303 (quoting *Vinyard v.*

*Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *see also Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982) (same).  "The purpose of this immunity is to allow government officials to carry

out their discretionary duties without the fear of personal liability or harassing litigation[.]"

*Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted).  Therefore, it

protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v.*

*Briggs*, 475 U.S. 335, 341 (1986).

 "To be entitled to qualified immunity, the defendant must prove that he was acting

within the scope of his discretionary authority." *Bostic*, 458 F.3d at 1303.  To determine

whether a defendant's actions were within the scope of his discretionary authority, courts

examine "whether the government employee was (a) pursuing a legitimate job-related

function (that is, pursuing a job-related goal), (b) through means that were within his power

to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)

(citations omitted).

 Once it is established that the defendant was engaged in a discretionary function, the

plaintiff bears the burden of demonstrating that the official is not entitled to qualified

immunity. *Bostic*, 458 F.3d at 1303 (citing *Lumley v. City of Dade City*, 327 F.3d 1186, 1194

(11th Cir. 2003)); *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). If the

facts alleged – viewed in the light most favorable to the plaintiff – do not demonstrate that the

defendant violated a clearly established federal statutory or constitutional right, the defendant

is entitled to qualified immunity. *Pearson v. Callahan*, – U. S.– , 129 S.Ct. 808 (2009);

*Bostic*, 458 F.3d at 1303. Based on Robert's own descriptions, and taking the facts alleged as

true, Sheriff Jones's actions were clearly carried out in performance of his duties and were within the scope of his authority. Consequently, the burden shifts to Plaintiff to show that qualified immunity does not attach. As previously discussed, Robert's allegations do not establish that Jones violated any clearly established federal statutory or constitutional law. Thus, Sheriff Jones retains qualified immunity and Robert's claims against him must be dismissed.

## XI.   DEFENDANT CORINNE HURST

Robert asserts claims against Circuit Clerk Corinne Hurst ("Hurst") in both her official and individual capacity. *See* Doc. 27 at p. 1. Specifically, he maintains that she falsified records before the Grand Jury, illegally convened the Grand Jury, back-dated documents, provided perjured testimony to the Grand Jury, withheld discovery, and participated in the ongoing conspiracy against him. *See, e.g.,* Doc. 27 at pp. 12, 15-25, 28-31, 33-34, 45, 48, 50-51, 68, and 70. Robert further includes Hurst in the general conspiracy claim of "simulating a legal process." *Id.*

### A.      Grand Jury Testimony

To the extent that Robert sues Hurst for any testimony she may have presented before the Grand Jury, Hurst is entitled to absolute immunity for her testimony. *Strength v. Hubert*, 854 F.2d 421 (11th Cir. 1988) overruled in part on other grounds by *Whiting v. Traylor*, 85 F.3d 581, 584 n. 4 (11th Cir. 1996) (absolute immunity in Eleventh Circuit for public official testifying at Grand Jury). Therefore, Robert's claims that Hurst lied to the Grand Jury warrant dismissal.

B.     **Statute of Limitations**

The claims against Hurst stem from the Grand Jury indictment issued on September 24, 2004.  They include the charge that Hurst improperly convened the Grand Jury, falsified documents relating to the indictment, failed to produce documents, falsified documents relating to the Louisiana extradition, and improperly withheld documents.  *See* Doc. 27 at pp. 12, 14, 18, 24, and 28.  The statute of limitations on Robert's § 1983 claim began to run on the date that Robert knew or should have known about the alleged wrongdoings of Hurst.  Thus, at the latest, Robert knew about the majority of Hurst's actions upon his arrest on January 18, 2006 in Louisiana.  Under the two year statute of limitations, Robert was required to file his § 1983 suit against Hurst on or before January 18, 2008.  Robert did not file suit until May 2, 2008.  *See* Doc. 1.  Robert's claims against Hurst are therefore time-barred and the Court need not consider Hurst's other defenses including absolute or qualified immunity.

## XII.   DEFENDANTS GLEN KING AND KIRKLAND, KING & RENFRO

Robert also asserts claims against Glen King ("King") and his firm Kirkland, King & Renfro ("KKR").  *See* Doc. 27 at pp. 79-86.  Specifically, he alleges that on July 16, 2007 King testified in the underlying criminal proceedings as an "expert forensic psychologist." *Id*. at 79.  King was contracted by the State of Alabama to determine Robert's mental competency and, according to Robert, he allegedly violated Robert's due process rights in order to get his $400.00 payment from the state.  *Id.*  at 80.  Robert also maintains that King forced him to take the mental competency test despite Robert's  no longer having counsel. *Id*. at 81.  After completing the test, King allegedly sent the documentation and results to

Gregory Cox.[15]  Robert alleges that King committed medical and legal malpractice, invaded his privacy, conspired with others in the ongoing conspiracy, violated his due process rights, breached his contract with the state of Alabama, and committed various state law torts.  *Id.* at 79-87.  Robert also asserts that KKR is responsible for King's actions.  *Id.*  From each defendant,  Robert seeks $25,000,000 in compensatory damages and $75,000,000 in punitive damages.  *Id.* at 83-86.

King and KKR filed their collective answer on October 7, 2008.  *See* Doc. 62.  They then filed a motion to dismiss on November 12, 2008.  *See* Doc. 68.  In the motion, Defendants raise a variety of defenses which generally assert that Plaintiff's claims must be dismissed for failure to state a claim.  *Id.*  In Robert's response, he focuses entirely on the timeliness of the answer and motion to dismiss.  *See* Doc. 73.  He fails to address the substantive legal arguments asserted by King and KKR.  In their reply, King and KKR acknowledge that their answer was filed after the twenty day deadline.  *See* Doc. 81 at p. 2. However, they correctly note that Robert did not request or obtain an entry of default prior to the filing of their answer and motion to dismiss.  *Id.* at 2-3.  Thus, Robert cannot now seek the entry of default and default judgment.  Although the court does not condone defendant's failure to file a timely response, in this instance the defect was cured prior to Plaintiff's  acting on it and therefore the motion to dismiss stands.

Additionally, the Court concurs with the Defendants' argument that the defense of

---

[15]     Robert contends here that Cox was a disinterested third party lawyer, but later states that Cox was his court appointed counsel.

"failure to state a claim" is not waived simply because Defendants raised the defense after filing a responsive pleading. *See* Doc. 81 at pp. 1-2. Rather, the defense may still be asserted. *See* Fed. R. Civ. P. 12(h)(2). While it is true it can no longer be raised in a Rule 12(b)(6) motion, the Court may construe the Rule 12(b)(6) as one seeking a judgment on the pleadings under Fed. R. Civ. P. 12(c). *Whitehurst v. Wal-Mart Stores, East, L.P.*, 2008 WL 5062325, *2 (11th Cir. 2008) (unpublished) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1093 n. 35, 1096 n. 46 (11th Cir. 2001)). The same standard of review applies to a 12(c) motion as a 12(b)(6) motion. *Myspace, Inc*., 528 F.3d at 418. Since there is no substantive difference, but only a procedural distinction between a motion to dismiss and a motion for judgment on the pleadings, the Court will address the arguments made within the instant motion to dismiss as if they had been properly raised in a motion for judgment on the pleadings.

**A.      Claims against KKR**

An essential element of a § 1983 action is that the conduct complained of was committed by a person acting under color of state law. The law is clear that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003); *see also Weaver v. James Bonding Co., Inc.*, 442 F.Supp.2d 1219, 1223 (S.D. Ala. 2006) (citing *Pinellas*). Further, "'only in rare circumstances can a private party be viewed as a "state actor" for § 1983 purposes.'" *Weaver*, 442 F.Supp.2d at 1223 (citations omitted). Other than employing Defendant King, KKR has no connection to the claims made by Robert. As there is no *respondeat superior* liability for § 1983

claims, KKR may only be held liable for its own unconstitutional conduct and not that of subordinates or employees. *Monell*, 436 U.S. at 694. Robert makes no direct allegations against KKR and, thus, these claims must be dismissed.

**B.    Claims against King**

Robert's § 1983 claims against King relate to the alleged deprivation of due process and conspiracy. Specifically, Robert asserts that the following acts violated his constitutional rights: (1) King's transmission of the mental health report to Defendant Gregory Cox, (2) his failure to provide Robert a copy of the documents he reviewed to determine whether Robert should be evaluated, (3) his conduct of the mental health evaluation, (4) his failure to provide Robert a copy of the mental health report promptly, and (5) his testimony that Robert needed a competency determination. *See* Doc. 27 at pp. 44, 79-84.

Beyond Robert's repeated conclusory allegations that "procedural due process was violated" by King's actions, Robert does not indicate how the actions of which he complains violated the Fourteenth Amendment's procedural due process clause. *See* Doc. 27 at pp. 87-90. The Due Process Clause of the Fourteenth Amendment provides that no state "shall ... deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend XIV, § 1. "'In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.'" *Arrington v. Helms*, 438 F.3d 1336, 1347-48 (11th Cir. 2006) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).

Turning to the first element, Robert must show the deprivation of a constitutionally protected liberty or property interest. Robert references nothing about property interests in his Amended Complaint, so the Court can only assume that his claims rest on his interest in reputation. However, as noted *supra* in Section VI, a person's interest in reputation alone is not a protected liberty interest within the meaning of the due process clause. *Paul*, 424 U.S. at 701. The allegations of injury to reputation must be accompanied by a constitutionally recognized injury. *Cypress Ins. Co.*, 144 F.3d at 1436. No facts in Robert's Amended Complaint would establish a constitutionally recognized injury. Without a constitutionally recognized injury, Robert cannot meet the first element of a § 1983 claim for a due process violation. Thus, the inquiry ends there.

Since Robert's § 1983 conspiracy claim depends on the showing of an underlying actual denial of his constitutional rights, this claim also fails. *See Hadley*, 526 F.3d at 1332. Thus, the Court need not address whether the defendants "reached an understanding to deny the plaintiff's rights." *Id.* (citing *Bendiburg*, 909 F.2d at 468). Consequently, Robert's § 1983 claims against King also fail.

### XIII.  DEFENDANTS WEBB & ELEY AND WINTHROP JOHNSON

Winthrop Johnson ("Johnson") and Webb & Eley were added as defendants when Robert filed his Amended Complaint. *Compare* Doc. 1 *with* Doc. 27. Johnson is an attorney at Webb & Eley, P.C. who represented original defendant Lee County and filed a responsive pleading on behalf of the County. *See* Docs. 12-13. In the Amended Complaint Robert asserts that the law firm of Webb & Eley is part of the conspiracy to lie to this court through

its attorneys' filings.  *See* Doc. 27 at p. 59.  Robert avers that Johnson failed to file a proper corporate/conflict disclosure statement with the Court because it failed to list the Meadowbrook Insurance Groups, which insures Lee County.  *Id.*  That failure and the filing of a motion to dismiss apparently form the basis of the claims against Johnson and Webb & Eley.

On September 23, 2008, Defendants Johnson and Webb & Eley filed a motion to dismiss.  *See* Docs. 52-53.  Attached to the motion is an affidavit submitted by Johnson.  However, as a general rule, the district court must "'limit[ ] its consideration to the pleadings and exhibits attached thereto'" when deciding a Rule 12(b)(6) motion to dismiss.  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).  Therefore, the Court will not consider the affidavit submitted with the motion to dismiss.[16]  In the motion to dismiss, Johnson and Webb & Eley assert that the Amended Complaint is due to be dismissed because (1) they have no authority over the other individuals, (2) Plaintiff fails to meet the requirements of Fed. R. Civ. P. 8, (3)  Robert fails to establish a constitutional violation as required under § 1983, (4) the claims are barred by the statute of limitations, (5) the damages sought are excessive, and (6) the complaint itself is frivolous and malicious.  *See* Docs. 52-53.

---

[16]     If the parties present evidence outside of the pleadings, and the court considers that evidence, then the motion to dismiss is converted into a motion for summary judgment.  *See* Fed. R .Civ. P. 12(b)(6); *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir. 1984).  However, because the Court declines to consider the evidence, it may still review the motion as one under Rule 12(b)(6).  *See, e.g., Austin v. Modern Woodman of America*, 275 Fed. Appx. 925, 926 (11th Cir. 2008) (unpublished opinion) (holding that because the district court did not consider matters outside the pleadings, it did not err when it failed to treat the motion to dismiss as a motion for summary judgment.).

In his response, Robert states that Webb & Eley is responsible for Defendant Johnson's (and the new attorney, Joseph Hubbard's) actions under the Alabama Rules of Professional Responsibility. *See* Doc. 73 at p. 24. He contends that both attorneys have lied to the court through their filings and allegedly fraudulent corporate/conflict disclosure statements. *Id*. Therefore, he maintains that the firm is responsible for the incompetence of the attorneys and the firm. *Id*. Robert again makes general complaints against the firm and its attorneys including irrelevant statements about Johnson's position in the military reserves. *Id*. at 24-25.

**A.     Claims against Webb & Eley**

As with KKR, the only connection that Webb & Eley has to Plaintiff's claims is that it is the law firm which employs Defendant Johnson (and Joseph Hubbard). As there is no *respondeat superior* liability for § 1983 claims, Webb & Eley may only be held liable for its own unconstitutional conduct and not that of subordinates or employees. *Monell*, 436 U.S. at 694. Since Robert makes no direct allegations against the firm, the claims against Webb & Eley warrant dismissal.

**B.     Claims against Johnson**

Private parties may be liable for § 1983 violations if there is an "understanding" or "willful participation" between the private and state defendants.[17] *Bendiburg*, 909 F.2d at

---

[17]     There are three distinct tests for determining whether the state action required for a § 1983 action exists: "(1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test." *Pinellas*, 344 F.3d at 1277. The joint action test applies in this case. "[N]othing more than an 'understanding' and 'willful participation' between private and state defendants is necessary to show the kind of joint action that will subject private parties to § 1983 liability." *Bendiburg*, 909 F.3d at 469.

469.  "[T]he linchpin for conspiracy is agreement . . ." *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied* 506 U.S. 832 (1992).  "For purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons."  *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (citing *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)).  Merely conclusory, vague, and general allegations of conspiracy are not sufficient.  *See Fullman*, 739 F.2d at 556-57.  "'[C]ourts insist that plaintiffs state with specificity the facts supporting an allegation of conspiracy in order to control frivolous conspiracy suits under § 1983.'" *Novak v. Cobb County-Kennestone Hosp. Authority*, 849 F.Supp. 1559, 1578 (N.D. Ga. 1994) (quoting *Schlosser v. Coleman*, 818 F.Supp. 1534, 1537 (M.D. Fla. 1993)).  Thus, to state a § 1983 conspiracy claim, plaintiff must establish the supporting, operative facts of the conspiracy.  *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984).

The Court has carefully reviewed the pleadings filed by Robert and at best his assertions are self serving, conclusory allegations that fail to assert a conspiracy claim which can survive a motion to dismiss.  *See Twombly*, 550 U.S. at — , 127 S.Ct. at 1964-65 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations omitted); *see also id*. at 1966 ("""this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties

and the court.""") (citation omitted).  A complaint containing conclusory, vague, and general allegations of conspiracy will be dismissed as insufficient. *Kearson v. Southern Bell Telephone & Telegraph Co.*, 763 F.2d 405, 407 (11th Cir. 1985); *see also Fullman*, 739 F.2d at 557 ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").

Additionally, the allegations pertaining to the Corporate/Conflict Disclosure statement are irrelevant as to the § 1983 claims.  Plaintiff fails to establish any kind of constitutional deprivation as a result of Defendant's allegedly deficient statement.  Civil Misc. No 3047 ("Order 3047") is for the Court's benefit.   Even if Defendant had failed to file a Corporate/Conflict Disclosure statement, Plaintiff would have no cause of action against him for his failure. Moreover, the fact that Johnson represented Lee County in this lawsuit and filed a motion to dismiss does not violate Robert's constitutional rights.  Therefore, the claims against Johnson are due to be dismissed.

## XIV.  DEFENDANTS JERRY WAYNE HAUSER & GREG COX

Robert asserts claims against his court-appointed attorneys, Jerry Wayne Hauser ("Hauser") and Greg Cox ("Cox").  *See* Doc. 27 at pp. 1-2.  Specifically, Robert alleges that Hauser was improperly permitted to withdraw and became a part of the conspiracy against him because he is a friend of Defendant Hurst.  *Id*. at 76-78.  Robert seeks $25,000,000 in compensatory damages and $75,000,000 in punitive damages against Hauser.  *Id*. at 78. Robert argues that Cox improperly received materials from Defendant King, improperly withdrew from his appointment to Robert's case, and participated in the conspiracy against

him.  *Id.* at 87-90.  Robert seeks $25,000,000 in compensatory damages and $75,000,000 in punitive damages against Hauser.  *Id.* at 89-90.  Hauser filed his answer on September 24, 2008 and a Rule 12(b)(6) motion to dismiss on January 9, 2009.  *See* Docs. 56, 74.  As with King and KKR, the Court will construe the Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings.  Cox properly filed his Rule 12(b)(6) motion on September 22, 2008.  *See* Doc. 47.  As both defendants acted as Robert's court appointed counsel, the discussion and analysis relating to them is the same.

Plaintiff challenges the conduct and/or actions of Hauser and Cox, the attorneys appointed to represent Plaintiff on his pending criminal charges.  An attorney who represents a defendant in criminal proceedings does not act under color of state law.  *Polk County v. Dodson*, 454 U.S. 312, 324-26, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Mills v. Criminal District Court No. 3*, 837 F.2d 677, 679 (5th Cir. 1988) ("[P]rivate attorneys, even court-appointed attorneys, are not official state actors and ... GENERALLY are not subject to suit under section 1983.").  In *O'Brien v. Colbath*, 465 F.2d 358, 359 (5th Cir. 1972), ("[§ 1983] was never intended as a vehicle for prosecuting malpractice suits against court-appointed attorneys.").

A public defender or a court appointed attorney may be sued under § 1983 only if he conspired to injure his client with someone who did act under color of state law.  *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985).  However, as with Johnson, Robert's claims of conspiracy are so conclusory that they merit dismissal.  Consequently, because Robert has not alleged or established that Hauser and Cox were anything other than court-appointed

attorneys who would be considered private persons and not state actors as required under §
1983, the claims must be dismissed.

## XV.  DEFENDANT BETTIE JEAN CARMACK

Like Johnson, Defendant Bettie Jean Carmack ("Carmack") was added as a defendant
when Robert filed his Amended Complaint.  *Compare* Doc. 1 *with* Doc. 27.  Carmack
represented Defendant Hurst until Robert sued her and the Court permitted her to withdraw.
*See* Docs. 7, 29, 30, 69, and 70.  Robert sues Carmack in both her official and individual
capacity.  *See* Doc. 27 at 2.

Robert alleges that Carmack lied to the Court in the motion to dismiss that she filed on
behalf of Defendant Hurst.  *See* Doc. 27 at pp. 68-69.  He asserts that her filing of the motion
to dismiss implicated her in the ongoing conspiracy against him.  *Id*.  Robert also avers that
because Carmack is an Assistant Attorney General whose  salary is paid by the state, the state
of Alabama is liable for her actions – which, according to Robert, violated his procedural due
process rights.  *Id*. at 68-73.  He seeks $25,000,000 in compensatory damages and
$75,000,000 in punitive damages.  *Id*. at 72-73.

Carmack filed a motion to dismiss on September 23, 2008 in which she asserted a
variety of defenses including immunity, the *Younger* abstention doctrine, and Robert's failure
to meet the requirements of Fed. R. Civ. P. 8.  *See* Doc. 46.  In his response, Robert focuses
on irrelevant information, including the date on a certificate of service, and reiterates his prior
allegations against Carmack by stating that she continues to lie to the court.  *See* Doc. 73 at
pp. 18-19.

**A.      Official Capacity Claims**

Robert alleges that "[t]he state of Alabama is interfering in the instant case by paying Assistant Alabama Attorney General Bettie Jean Carmack to lie. . ."  *See* Doc. 27 at p. 5.  As previously discussed with regard to other defendants, a suit against Carmack in her official capacity is in effect a suit against the state of Alabama.  Thus, any § 1983 suit against Carmack in her official capacity is barred by Eleventh Amendment immunity and, in addition, the state does not meet the definition of a "person" under § 1983.  Consequently, the claims are due to be dismissed.

**B.      Individual Capacity Claims**

As discussed previously in section XII, Robert provides no explanation of how Carmack's actions violated the Fourteenth Amendment's procedural due process clause other than his conclusory statement that "procedural due process was violated."  *See* Doc. 27 at pp. 68-73.  Robert must show (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.  *Arrington*, 438 F.3d at 1347-48.  Robert's due process allegations have already been adjudged to be due for dismissal against other defendants, and the same rationale applies to the claims against Carmack.  Specifically, Robert fails to establish the first element of a § 1983 claim for a due process violation.

Robert's § 1983 conspiracy claim hinges on the showing of an underlying actual denial of his constitutional rights; hence this claim also fails.  *See Hadley*, 526 F.3d at 1332. Moreover, his conspiracy claims fail because the allegations are so conclusory that they

merit dismissal.

### XVI.   DEFENDANT JOSEPH L DEAN, JR.[18]

Like Johnson and Carmack, Defendant Joseph L. Dean, Jr. ("Dean") was added as a defendant after he filed a motion to dismiss on behalf of Defendant Abbett.  *See* Docs. 1, 8, and 27.  Robert sues Dean solely in his individual capacity.  *See* Doc. 27 at p. 2.  Specifically, he alleges that Dean has misled and/or lied to the court in the motion to dismiss because he asserted the defense of immunity on behalf of Abbett.  *Id.* at 7 and 56.  Robert states that Dean's actions "can only be construed as furthering a conspiracy of the ongoing illegal simulated legal process in Lee County. . ."  *Id.* at 56.  He seeks $25,000,000 in compensatory damages and $75,000,000 in punitive damages.  *Id.* at 57-58.

In his motion to dismiss, Dean contends that the Court lacks jurisdiction over the claims against him because Robert's § 1983 and § 1985 claims fail as a matter of law.  *See* Doc. 54 at p. 3-5.  However, § 1983 and § 1985 are federal statutes, and the Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and § 1343(a).[19]  While §§ 1983

---

[18]     In the Amended Complaint, Robert identifies the defendant as Joe S. Dean. *See* Doc. 27.  The Defendant's motion to dismiss lists the name as Joseph L. Dean, Jr. and in his response, Robert uses that same version.  *See* Docs. 54 and 73.  Therefore, the Court will use the name identified by the defendant.

[19]     28 U.S.C. § 1343(a) states that "the district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42; (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent; (3) To redress the

and 1985 are merely statutes that provide a vehicle to bring lawsuits for constitutional deprivations, the court clearly has jurisdiction to hear claims under these statutes, even if the claims ultimately fail. Otherwise all claims brought under §§ 1983 and 1985 which result in dismissal – either on a motion to dismiss or on summary judgment – would deprive the court of jurisdiction.

Alternatively Dean asserts a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted. In his response, Robert asserts that Dean's responsive pleading was filed one day late, as it was due on September 22, 2008 but not filed until September 23, 2008. *See* Doc. 73 at p. 15. Accordingly, Robert maintains that Dean is in default and cannot file the motion to dismiss. As with King and KKR, the motion to dismiss technically may have been late, but Robert did not request or obtain an entry of default prior to the filing of an answer and motion to dismiss. He cannot now seek the entry of default and default judgment; consequently, the Court will consider the motion to dismiss.

Like the other defendants' claims, Robert's § 1983 claims fail because he cannot show the deprivation of a constitutionally protected liberty or property interest. Therefore, these claims against Dean are also due to be dismissed. The § 1983 conspiracy claims also fail since Robert cannot show an underlying denial of his constitutional rights and the

---

deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

conspiracy claims are merely conclusory.  Because § 1983 does not reach the conduct of private persons, and Robert has done nothing to show that Dean is more than a private attorney representing a defendant, the claims must be dismissed.

## XVII.   STATE LAW CLAIMS

Robert asserts a variety of state law claims.  Having determined that the Defendants are entitled to dismissal on all federal law claims, the undersigned will recommend that the court decline to exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  *See McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002) ("The court may decline to exercise jurisdiction over state-law claims where the Court has dismissed all the federal claims over which it has original jurisdiction").  Robert's state law claims are due to be dismissed  without prejudice.[20]

## XVIII.   REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF

Robert also makes a brief statement concerning declaratory and injunctive relief.  *See* Doc. 27 at p. 37.  He does not specify the declaratory or injunctive relief he seeks but, from the nature of his Amended Complaint, the logical conclusion is that he desires (1) the cessation of the state criminal proceedings and (2) the closing of the "Most Wanted" website. With regard to Robert's request for declaratory and injunctive relief relating to the state law criminal proceedings, the Court applies the *Younger* doctrine and recommends dismissal of

---

[20]      As all the claims against the *Opelika-Auburn News* are state law claims, this defendant is also due to be dismissed despite its failure to file a responsive pleading.  *See* Doc. 27 at pp. 91-93.

those claims without prejudice.  As to the issues relating to the website, since the undersigned recommends that the Court decline to exercise supplemental jurisdiction, those claims are also due to be dismissed without prejudice.

## XIX.   REQUESTS FOR SANCTIONS

Defendants Lee County and Carmack file separate motions for sanctions against Plaintiff Robert.  *See* Docs. 44, 46, and 85.  In the motions, they assert that Robert's claims are so frivolous, malicious, and harassing that the imposition of sanctions is appropriate.  *Id.* The imposition of sanctions under Rule 11 is reserved for only the most egregious violations. In this instance, the Court has concluded that the dismissal of Robert's claims is appropriate; however, that conclusion alone is insufficient to support the imposition of sanctions.  While it appears that Robert *may* be using this litigation to harass and intimidate the defendants, the Court is loathe to impose sanctions at this time.

However, Robert is advised, as this court has consistently reminded similarly situated *pro se* litigants, that the privilege of filing a federal court lawsuit is subject to valid and reasonable limitations designed not only to conserve limited judicial resources, but also to prevent abuse by unlearned laymen who may be tempted to seize the privilege as a license to bring to federal court bootless claims and grievances unresolved in other forums or for which there simply is no remedy.  Frivolous or malicious lawsuits against any defendants – corporate, public, institutional, or individual – automatically result in inconveniences, burdens, and costs associated with the defense of such actions.  *Pro se* litigants are bound to honor Rule 11 of the Federal Rules of Civil Procedure, which provides in pertinent part at

Rule 11(b):

> By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, or later advocating it - an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1)     it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2)     the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>>
>> (3)     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>> (4)     the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

A plaintiff may incur a substantial penalty for non-compliance with this rule if he or she files a federal court lawsuit without first conducting "an inquiry reasonable under the circumstances" in order to inform his "knowledge, information, and belief" about the merits of the lawsuit. Rule 11further provides:

> A sanction imposed under this rule must be limited to what suffices to deter repetition  of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4). Thus, while the court declines to recommend sanctions in this

particular case, Robert should carefully consider the potential consequences should the Court deem any future lawsuits to be frivolous or malicious.

## XX. CONCLUSION

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that

(1)   The motions to amend (Docs. 76, 85) be **GRANTED**.

(2)   The motions to dismiss (Docs. 40, 41, 46, 47, 49, 51, 52, 54, 60, 63, 67, and 74) be **GRANTED**.

(3)   Plaintiff's motions to strike (Docs. 59, 80) and Motion on the Pleadings (Doc. 82) be **DENIED**.

(4)   Jennifer Thompkins' Motion to Quash Service (Doc. 49) be **DENIED as moot**.

(5)   The motions for sanctions under Rule 11 (Docs. 44 and 46) be **DENIED**.

(6)   All other outstanding motions be **DENIED as moot**.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before March 25, 2009.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain

error or manifest injustice.  <u>Resolution Trust Co. v. Hallmark Builders, Inc.</u>, 996 F.2d 1144,

1149 (11th Cir. 1993); <u>Henley v. Johnson</u>, 885 F.2d 790, 794 (11th Cir. 1989).

     Done, this 12ᵗʰ day of March, 2009.


                /s/ Susan Russ Walker              
                SUSAN RUSS WALKER
                CHIEF UNITED STATES MAGISTRATE JUDGE